**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

|  |  |  |
|---|---|---|
| MARIAH C.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:23-cv-0811 (LRV) |
| | ) | |
| MARTIN O'MALLEY, | ) | |
| COMMISSIONER | ) | |
| OF SOCIAL SECURITY,[2] | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on the parties' cross-motions for summary judgment (Dkt. Nos. 11 & 12). Pursuant to 42 U.S.C. § 405(g), Plaintiff Mariah C. seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her claim for disability insurance benefits ("DIB") under the Social Security Act. The Commissioner's final decision is based on a finding by the Administrative Law Judge ("ALJ") and Appeals Council for the Office of Appellate Operations ("Appeals Council") that Plaintiff was not disabled as defined by the Social Security Act and applicable regulations. For the reasons stated

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] On December 20, 2023, Martin O'Malley was sworn into office and, therefore, was automatically substituted in place of Acting Commissioner Kilolo Kijakazi as Defendant in this action. *See* Fed. R. Civ. P. 25(d).

below, the Court will **DENY** Plaintiff's Motion, **GRANT** Defendant's Motion, and **AFFIRM** the final decision of the Commissioner.[3]

## I.   PROCEDURAL HISTORY

On May 22, 2020, Plaintiff applied for DIB with an alleged onset date of May 15, 2015 (which she later amended to May 22, 2020 (AR 44, 236)), due to the following alleged impairments: major depressive disorder, generalized anxiety disorder, herniated discs pushing on sciatic nerve, deteriorating discs and narrowing of spine, and high blood pressure.  (AR 124.)  On March 25, 2021, the Social Security Administration ("SSA") denied Plaintiff's application.  (AR 122.)  On June 3, 2021, Plaintiff requested reconsideration of the denial, and on October 27, 2021, the SSA affirmed its denial.  (AR 137.)  On November 18, 2021, Plaintiff requested a hearing before an ALJ.  (AR 162.)  On March 24, 2022, Plaintiff appointed Colleen Ilacqua of Trajector Disability, LLC, as her representative.  (AR 234.)

On November 1, 2022, ALJ Brian Rippel conducted a hearing via telephone conference.[4] (AR 40, 217.)  Plaintiff provided testimony and answered questions posed by the ALJ and her representative.  (AR 45 *et seq*.)  A vocational expert ("VE") also answered questions from the ALJ and Plaintiff's representative.  (AR 55 *et seq*.)  On November 15, 2022, the ALJ issued a decision finding that Plaintiff was not disabled under Section 1614(a)(3)(A) of the Social Security Act. (AR 10, 25.)  Plaintiff requested that the Appeals Council review the ALJ's decision, and on May 24, 2023, the Appeals Council denied Plaintiff's request, finding no reason under its rules to review

---

[3] The Administrative Record ("AR") in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C).  (*See* Dkt. No. 6.)  In accordance with those rules, this opinion excludes any personal identifiers such as Plaintiff's social security number and date of birth (except for the year of birth).  The discussion of Plaintiff's medical information is limited to the extent necessary to analyze the case.

[4] The hearing before the ALJ was conducted by telephone due to the extraordinary circumstances presented by the COVID-19 pandemic.

the ALJ's decision.  (AR 1, 4; *see also* AR 330–33 (Plaintiff's brief on appeal).)  As a result, the ALJ's decision became the final decision of the Commissioner, and Plaintiff was given sixty days to file a civil action challenging the decision.  (AR 1–2); *see* 20 C.F.R. §§ 404.981, 416.1481.

On June 23, 2023, Plaintiff filed this civil action seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. 405(g).  (Dkt. No. 1.)  On August 28, 2023, the Commissioner filed the Administrative Record ("AR").  (Dkt. No. 6.)  On September 21, 2023, the Court granted in part Plaintiff's motion for an extension of the deadline to file her opening brief and set a briefing schedule.  (Dkt. No. 8.)  On October 23, 2023, upon the consent of all parties, the Court ordered that the matter proceed before a United States Magistrate Judge.  (Dkt. No. 10.)

On November 13, 2023, Plaintiff filed her opening brief.  (Dkt. No. 11.)  On December 18, 2023, Defendant filed an opposition to Plaintiff's brief and a Motion for Summary Judgment.  (Dkt. No. 12.)  Plaintiff filed a Reply on January 5, 2024.  (Dkt. No. 13.)  Neither party requested a hearing.  The parties' motions are thus ripe for disposition.

## II.   STANDARD OF REVIEW

Under the Social Security Act, the district court should affirm the Commissioner's final decision "when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence."  *Moscio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)); *accord Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 353 (4th Cir. 2023); *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  It consists of "more than a mere scintilla of evidence but may be somewhat

less than a preponderance." *Mastro*, 270 F.3d at 176 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).  In determining whether an ALJ's decision is supported by substantial evidence, the Court does not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Id.* (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)).  In other words, "[i]t is the ALJ's duty, and not that of the reviewing court, to resolve evidentiary conflicts, and the ALJ's decision must be sustained if supported by substantial evidence." *Maggie W. v. Comm'r of Soc. Sec.*, 1:22CV1157 (CMH/JFA), 2023 WL 6121246, at *2 (E.D. Va. Aug. 17, 2023) (citing *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996)), *report and recommendation adopted*, 2023 WL 6120606 (E.D. Va. Sept. 18, 2023).

III.   **FACTUAL BACKGROUND**

   **A.  Summary of Evidence Before the ALJ**

   The following is a summary of the relevant evidence before the ALJ regarding Plaintiff's biographical information, medical history, and treatment.[5]

   Plaintiff was born in 1981 and was 38 years old on the date of her DIB application. (AR 124.)  Plaintiff has an eleventh-grade education and previously worked in childcare and retail. (AR 260.)  Plaintiff testified that her last employment was approximately seven years ago.  (AR 46.)  Plaintiff does not have a GED.  (AR 45.)

   In an Adult Function Report dated April 27, 2020, Plaintiff reported that she is unable to work and perform many daily activities because of the pain caused by conditions in her back.  (AR

---

[5] The AR contains more than 3,000 pages of medical records from various sources relating to Plaintiff's medical treatments.  This summary provides an overview of Plaintiff's medical treatments and conditions relevant to the errors asserted in her appeal and is not intended to be an exhaustive list of every medical treatment; it is also limited to the evidence relevant to Plaintiff's amended AOD of May 22, 2020, which is consistent with the ALJ's review and analysis of the record.  (*Compare* AR 122 (original AOD of May 15, 2015), *with* AR 44 (amending AOD to May 22, 2020); *see also* AR 10, 45 (noting amended AOD).)

270 *et seq.*)  For example, Plaintiff reported that she "can't do much of anything" because her back "hurts too much."  (AR 271; *see also* AR 274 ("Everything I used to do I can't because of my back.").)  Although Plaintiff reported that she is able to prepare some meals, do some laundry, and shop in stores, she has trouble standing and walking.  (AR 271–74.)  In response to a question about whether Plaintiff had "any problems getting along with family, friend, neighbors, or others," Plaintiff reported that she "argue[s] every once in a while, but that's normal.  Nothing that's not normal."  (AR 275.)  Plaintiff further reported that she has trouble following verbal instructions (AR 275), that she hasn't "had any problems" getting along with authority figures (AR 276), that she does not handle changes in routine "too well" (AR 276), that she is not "able to concentrate on what [she's] trying to do" when in pain (AR 277), and that she "always" has problems understanding instructions "due to dyslexia" (AR 277).  In a Function report dated July 4, 2021, Plaintiff similarly noted issues with her back and related pain.  (AR 292 *et seq.*)  For example, Plaintiff reported that her "pain has stopped all activities."  (AR 296.)  Plaintiff reported that she is "good" with written instructions, "OK" with verbal instructions, gets along "OK" with authority figures, and that she does not handle stress well.  (AR 298.)

In a psychological testing report from December 2018, Plaintiff was diagnosed with Major Depressive Disorder, Recurrent, Severe, with Anxious Distress, as well as Generalized Anxiety Disorder.  (AR 368; *see also* AR 2209 (diagnoses remained current as of February 2020).)  Plaintiff had a full-scale IQ score of 77.  (AR 367.)  In 2020, Plaintiff had regular appointments with her local community services board.  In March 2020, Plaintiff denied a history of inpatient psychiatric treatment, but reported "feeling overwhelmed, helpless, hopeless, amotivation, and isolated."  (AR 2209.)  Plaintiff reported that she managed her diagnoses and symptoms through medication management and "1:1 therapy."  (*Id.*)  In appointment notes from March 2020 through December 2020, it was noted that Plaintiff often presented as "cooperative" (AR 2080, 2117, 2163, 2180,

2290, 2319, 2343, 2379, 2432), had pressured speech (AR 2032, 2080, 2117, 2144, 2163, 2180, 2290, 2319, 2343, 2370, 2379, 2401, 2432), a "flat" and/or "depressed" mood and affect (AR 2032, 2080, 2117, 2144, 2163, 2180, 2290, 2319, 2343, 2370, 2401, 2432), and appropriate cognition. (AR 2032, 2080, 2117, 2144, 2163, 2180, 2290, 2319, 2343, 2370, 2379, 2401, 2432).   In June 2020, it was noted that Plaintiff "attended her appointments as scheduled," was "medication compliant," and attended 1:1 therapy appointments as scheduled one time per month.  (AR 2059, 2061.)

     In October 2020, Plaintiff presented to the emergency room for a panic attack after running out of medication five days earlier.  (AR 2464; *see also* AR 2276.)  The treating physician noted that Plaintiff was "very anxious," with a "depressed mood and affect," and suspected that Plaintiff was "experiencing an acute panic attack" due to an "acute grief reaction after relative recently passed away."  (AR 2466–67.)  On October 13, 2020, Plaintiff had a follow-up appointment with Erica Bindrim, NP, at Family Psychiatric Services.  (AR 2585.)  In the initial visit intake form, Ms. Bindrim indicated that Plaintiff had been in therapy with the office's counselor, Donna Carson, LPC, "for over a year."[6]   (AR 2585.)   Ms. Bindrim indicated that Plaintiff had recently decompensated due to multiple deaths of relatives and friends, and that her symptoms at the time were 7/10 in severity.  (AR 2585.)  At the initial intake appointment, Ms. Bindrim conducted a Mental Status Exam, and noted that Plaintiff was "attentive," that she "had poor eye contact," that she "appeared cooperative and worried," that she had a cooperative attitude with a "depressed and downcast" mood.  (AR 2586.)  Ms. Bindrim further noted that Plaintiff had normal speech,

---

[6] Donna Carson previously treated Plaintiff at the Youth for Tomorrow practice, at which Erica Bindrim also worked and treated Plaintiff as a medication management provider.  (*See* AR 2276 (noting Plaintiff would be seeing therapist and medication management provider "Erica" at new practice); AR 399–402 (notes from therapy session with Donna Carson at Youth for Tomorrow practice in August 2019); AR 432–35 (evaluation by Erica Bindrim at Youth for Tomorrow practice in September 2019).)

appropriate thought content, unrealistic judgment that was "impaired about [her] health care and impaired about social situations," and that she was oriented but had "low normal attention/concentration and low normal sustained attention seen on exam." (AR 2586.) Plaintiff also had "low normal" memory, "mildly impaired verbal intelligence and mildly impaired nonverbal intelligence," "mildly impaired cognitive flexibility," and "moderately impaired abstraction on exam." (AR 2587.) Finally, Ms. Bindrim reported that Plaintiff had "mildly impaired verbal cognitive/social judgment," and mild to moderately "impaired executive functioning." (AR 2587.)

On October 27, 2020, Plaintiff reviewed her medications with Ms. Bindrim and reported that she was "feeling a little better." (AR 2588.) On November 10, 2020, Plaintiff reported side effects of the medication that she was taking to Ms. Bindrim, who noted that a medication reconciliation was performed, and that Plaintiff continued to be seen by her PCP and a pain specialist for back pain. (AR 2590.) Ms. Bindrim noted that Plaintiff "[f]eels that [her medication] help[s] with sleep and anxiety and allergies." (AR 2590.) In appointment notes from November 25, 2020, Ms. Bindrim wrote that Plaintiff had a "lack of focus and attention issues with completing tasks and at time experiencing what feels like anxiety getting overwhelmed." (AR 2592.) Ms. Bindrim prescribed ADHD medication. (*Id.*)

On December 1, 2020, Plaintiff met with Donna Carson, LPC, and reported that she continued to experience symptoms of depression. (AR 2595.) On December 9, 2020, Plaintiff met with Ms. Bindrim and reported that "her mood has been stable" but that she had trouble staying asleep at night. (AR 2596.) Plaintiff also reported that her focus "is a bit better" and that she felt "that she has been doing ok." (*Id.*) On January 5, 2021, Plaintiff saw Ms. Carson and reported that her medication seemed to be helping with her symptoms, but that she "feels like she cannot make changes in her life since she cannot work with her back pain and her limited reading skills."

(AR 2604.)  On January 6, 2021, Plaintiff saw Ms. Bindrim and reported that her medication was "working [with] no side effects" and that her mood was stable.  (AR 1260.)  On January 20, 2021, Plaintiff reported to Ms. Bindrim: "I feel great no complaints," and that she needed refills of her medication.  (AR 2608.)

In February 2021, Plaintiff presented to the emergency room for a possible allergic reaction to an antibiotic.  (AR 2454.)  It was noted that Plaintiff was alert and oriented with normal mood and affect.  (AR 2456.)  Plaintiff was treated with a dose of oral steroids and discharged.  (AR 2457.)  On February 2, 2021, Plaintiff had an appointment with Ms. Carson, who noted that Plaintiff "feels depressed and anxious at times but feels there is nothing she can do."  (AR 2611.)  Ms. Carson further noted that Plaintiff "wants to remain in service but agrees she has very little to share in session and very little she is trying to change," and set Plaintiff's next appointment for two months out.  (*Id.*)

At her next appointment with Ms. Carson on April 6, 2021, Plaintiff "stated she has been anxious," but noted that she was "eating better and her diabetes is more controlled."  (AR 2612.)  Ms. Carson noted that Plaintiff "has been medication compliant and has an appointment with the nurse practitioner [Ms. Bindrim] the following day to look at her medication."  (*Id.*)  Finally, it was noted that Plaintiff "was alert and oriented times four," that she "reported symptoms of depression and anxiety," that her "affect was within normal limits," that her "memory was intact" and "attention was normal," that her "mood was euthymic," she was "disheveled" with normal eye contact and slowed motor activity, and that she was "cooperative" with "fair" insight and judgment.  (*Id.*)

On April 7, 2021, Plaintiff met with Ms. Bindrim and reported that "her mood has been up and down" and that "[p]ain is preventing her from working."  (AR 2614.)  On April 12, 2021, Plaintiff presented to the emergency room for a panic attack coupled with chest pressure.

(AR 2446.)  It was noted that Plaintiff had normal mood, affect, and behavior.  (AR 2448.)
Plaintiff was given a dose of anti-anxiety medication and discharged.  (AR 2450–51.)  On June 7,
2021, Plaintiff had an appointment with Ms. Carson, at which she reported feeling "depressed and
anxious at times" and "helpless," including because she had been denied social security disability
benefits.  (AR 2617.)  Ms. Carson noted that Plaintiff was alert and oriented with an intact memory
and normal attention, a euthymic mood, normal eye contact, slowed motor activity, fair judgment
and insight, and cooperative behavior.  (*Id.*)

In April 2022, Plaintiff again saw Ms. Carson for counseling following the passing of her
father.  (AR 3110.)  At an appointment on April 4, 2022, Ms. Carson noted that Plaintiff was alert
and oriented, reported symptoms of depression and anxiety, and had a depressed mood with normal
attention and eye contact.  (*Id.*)  On May 12, 2022, Plaintiff met with Ms. Bindrim to refill her
medication.  (AR 3112.)  Ms. Bindrim's treatment notes reflect that Plaintiff reported anxiety due
to family illnesses, that Seroquel had helped "balance her mood," and that she was "[l]ess irritable
and more stable overall" prior to her father's death.[7]  (*Id.*)  On August 8, 2022, Plaintiff met with
Ms. Carson and reported that she has "'bad days,' in which she misses her father."  (AR 3116.)
On August 10, 2022, Plaintiff met with Ms. Bindrim and reported that despite her "ongoing issues

---

[7] Plaintiff's opening brief asserts that, at this appointment, "Ms. Bindrim found Plaintiff had poor
eye contact, her mood was depressed and her affect was downcast and depressed, her recent
memory was impaired, she exhibited mildly impaired verbal and nonverbal intelligence, and she
demonstrated moderately impaired executive functioning."  (Dkt. No. 11 at 5 (citing AR 3113-
14).)  These findings, however, were documented word-for-word in the prior mental status exam
(MSE) that Ms. Bindrim conducted on October 13, 2020.  (*Compare* AR 2586–87 (MSE
summary), *with* AR 3114 (MSE summary).  Upon review, the Court notes that the findings in the
"MSE" section of Ms. Bindrim's treatment notes were never changed from the initial note on
October 13, 2020.  In other words, it appears to the Court that Ms. Bindrim conducted the mental
status exam only one time, on October 13, 2020, and that those findings were merely repeated in
all subsequent treatment notes.  (*See* "MSE" at AR 2586–87, 2605–06, 2608–09, 2615, 3114,
3120.)

with loss and grief," she "does feel that her medication is helping to stave off depression and anxiety as she continues the grieving process."  (AR 3118.)

During 2022, Plaintiff continued to attend appointments with her local community services board.  Appointment notes generally reflect that Plaintiff presented with appropriate, cooperative, and/or pleasant behavior, normal speech with congruent mood and affect, and had appropriate cognition.  (*See* AR 3323 (January 2022), AR 3308 (February 2022), AR 3271 (April 2022), AR 3262 (July 2022).)   Plaintiff, however, sometimes presented with pressured speech and a depressed, anxious, and/or flat mood and affect.  (*See* AR 3323 (January 2022), AR 3308 (February 2022), AR 3303 (March 2022).)  During this time, Plaintiff reported that she had trouble with missing therapy appointments due to anxiety (AR 3300), but then later reported that "she has attended all of her therapy appointments and they have been helping her a lot" (AR 3268), and that she "continues to see her providers and is satisfied" (AR 3259).

### B.  Testimony at the Administrative Hearing

At the telephonic hearing on November 1, 2022, Plaintiff appeared with her representative before the ALJ.  (AR 40.)  In response to questioning by her representative, Plaintiff testified that she is unable to work because her "back is really, really bad" and that she has "severe depression and anxiety" which cause her "panic attacks off and on."  (AR 47.)  Plaintiff testified that, due to the pain in her back, she lays "at least 12 hours a day, if not more."  (AR 49.)  She further testified that her panic attacks are triggered by pain and being in a large crowd.  (AR 51.)  Plaintiff testified that she has "mood swings" due to bipolar disorder but that she is "on medication and the medication has helped tremendously."  (AR 52.)  Plaintiff testified that "some days . . . it's hard for [her] to concentrate," depending on the pain she is experiencing, and that she occasionally needs reminders to complete tasks like taking medications and attending medical appointments. (AR 53.)

10

### C.  The ALJ's Decision on November 15, 2022

On November 15, 2022, the ALJ issued a decision that Plaintiff was not disabled under Section 1614(a)(3)(A) of the Social Security Act based on her application for DIB for the period from the AOD of May 22, 2020 to the date of the decision. (AR 25.) When determining whether an individual is eligible for DIB, the ALJ is required to follow a five-step sequential evaluation. See 20 C.F.R. §§ 404.1520(a), 416.920(a). The ALJ must consider whether a claimant: (1) is currently engaged in substantial gainful employment; (2) has a severe impairment; (3) has an impairment that meets or equals any of the impairments listed in Appendix 1, Subpart P of the regulations that are considered per se disabling; (4) has the ability to perform past relevant work; and (5) if unable to return to past relevant work, whether the claimant can perform other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520(a); *see also Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). While the claimant bears the burden to prove disability for the first four steps of the analysis, the burden then shifts to the Commissioner at step five. *Astrue*, 667 F.3d at 472–73. The regulations promulgated by the SSA provide that all relevant evidence will be considered in determining whether a claimant has a disability. *See* 20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3).

Here, the ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since May 22, 2020, the application date (20 CFR 416.971 et seq.).

2. The claimant has the following severe impairments: left knee mild osteoarthritis, morbid obesity, lumbar and lumbosacral degenerative disc disease with chronic low back pain, respiratory impairments (airway disease, asthma), left lower extremity radiculopathy, pain disorder, borderline intellectual functioning, generalized anxiety disorder, bipolar disorder, attention deficit hyperactivity disorder (ADHD), and depressive disorder (to include dysthymia, pervasive depressive disorder, and major depressive disorder) (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CRF 416.967(a) sedentary work with lifting and/or carrying up to 10 pounds occasionally and less than 10 pounds frequently, standing and/or walking up to 2 hours and sitting up to 6 hours in an 8-hour workday.  Additionally, the claimant is limited to: only occasional pushing and/or pulling (including foot control operations) with the left lower extremity; only occasional climbing of ramps or stairs, balancing (as it is defined in the Selected Characteristics of Occupations), stooping, kneeling, crouching, and crawling; no climbing of ladders, ropes, or scaffolds; only occasional exposure to vibration, respiratory irritants (such as fumes, odors, dust, gases, and poorly ventilated areas in concentrations higher than found in a typical household), or workplace hazards (including unprotected heights and dangerous machinery); limited to jobs that require understanding, remembering, and carrying out simple instructions and using judgment to make simple work-related decisions; cannot perform work requiring a specific production rate such as assembly line work or work that requires hourly quotas; limited to only occasional interaction with the public, co-workers, or supervisors; and limited to dealing with only occasional changes in a routine work setting.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born [in] 1981 and was 38 years old, which is defined as a younger individual age 18-44, on the date the application was filed (20 CFR 416.963).

7. The claimant has a limited education (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10. The claimant has not been under a disability, as defined in the Social Security Act, since May 22, 20220, the date the application was filed (20 CFR 416.920(g)).

On May 24, 2023, the Appeals Council denied Plaintiff's request to review the ALJ's decision.  In the written notification, the Appeals Council stated that Plaintiff's proposed reasons for why she disagreed with the ALJ's decision provided no basis to alter the ALJ's decision. (AR 1.)

IV.    **ANALYSIS**

Plaintiff contends that the Commissioner's decision should be reversed for one reason: "The ALJ's RFC determination was not supported by substantial evidence where [the ALJ] failed to properly evaluate the mental opinion of Erica Bindrim, PMHNP-BC."  (Dkt. No. 11 at 7.) Specifically, Plaintiff argues that the ALJ erroneously concluded that Ms. Bindrim's opinions regarding Plaintiff's mental functioning limitations were not persuasive because he improperly relied on "unremarkable objective status exam findings that only served to mischaracterize the evidence" and failed to consider "Ms. Bindrim's supporting treatment notes as a whole."  (*Id.* at 9.)  Thus, if the ALJ had properly evaluated Ms. Bindrim's opinions, he "would have inevitably found Plaintiff disabled."  (*Id.* at 8, 13.)

In response, Defendant asserts that the ALJ's decision should be affirmed because "the record evidence amply supports the ALJ's conclusion that the nurse practitioner's opinion regarding Plaintiff's ability to work was unpersuasive."  (Dkt. No. 12 at 1.)  Specifically, in "assessing the persuasiveness of NP Bindrim's opinion, the ALJ first addressed the required supportability factor," and then properly "addressed the required factor of consistency."  (*Id.* at 13-14.)  Defendant further argues that, contrary to Plaintiff's assertion, the ALJ did not cherry-pick evidence, but "carefully evaluated the objective evidence in the record together with Plaintiff's subjective complaints" to support his findings that Ms. Bindrim's opinions were unpersuasive.  (*Id.* at 17.)  Accordingly, because substantial evidence supports the ALJ's decision, it should be affirmed.

Plaintiff filed her disability claim after March 27, 2017, so a revised regulatory framework applied to the ALJ's evaluation of the medical opinions in the record. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15132-01 (Mar. 27, 2017)). Under this framework, the ALJ does not

"defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must consider the persuasiveness of each medical opinion or prior administrative finding using the five factors listed in 20 C.F.R. § 404.1520c(c): supportability, consistency, relationship with the claimant, specialization, and other factors. Of these factors, the most important are "supportability" and "consistency," and the ALJ must specifically explain how these two factors were considered in assessing the persuasiveness of each medical opinion. 20 C.F.R. §§ 404.1520c(a), (b)(2).

"Supportability" means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions" will be. 20 C.F.R. § 404.1520c(c)(1). "Consistency" means that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). The regulations further instruct that, for purposes of administrative feasibility, an ALJ is only required to articulate these factors at the "source-level," meaning that an ALJ does not have to articulate how he "considered each medical opinion or prior administrative medical finding from one medical source individually;" instead, a medical source's opinions and findings are considered "together[,] using the factors." 20 C.F.R. §§ 404.1520c(a), (b)(1).

As further explained below, the Court finds that the ALJ's decision should be affirmed because: (1) the ALJ applied the correct legal standard when evaluating the persuasiveness of Ms. Bindrim's opinions (i.e., he correctly applied the supportability and consistency factors), and (2) substantial evidence supports the ALJ's conclusions regarding the persuasiveness of Ms.

14

Bindrim's opinions.  *See May v. Comm'r of Soc. Sec. Admin.*, 2023 WL 2908812 (4th Cir. Apr. 12, 2023) (affirming ALJ's supportability analysis).[8]

### A.  The ALJ Applied the Correct Legal Standard in Evaluating the Persuasiveness of Ms. Bindrim's Medical Opinions

As outlined above, Ms. Bindrim began seeing Plaintiff in October 2020 following an emergency room visit due to a panic attack.  (AR 2585.)  On March 22, 2022, Ms. Bindrim completed a "Mental Capacity Assessment" in which she provided her opinion regarding whether Plaintiff had "mild," "moderate," "marked," "extreme," or "no" limitations in various areas of mental functioning.  (AR 2985–87.)  In total, Ms. Bindrim provided her opinion about Plaintiff's mental functioning limitations for twenty-two (22) separate categories, which were grouped into the following four sections: (1) "understanding, remembering or applying information," (2) "concentration, persistence, or maintaining pace," (3) "adapting or managing oneself," and (4) "interacting with others."  (*Id.*)  Under each of the four general areas, there was a space for Ms. Bindrim to "[d]escribe the medical/clinical findings that support [her] assessment," which Ms. Bindrim left blank.  (*Id.*)  At the end of the Assessment, Ms. Bindrim noted that Plaintiff's use of alcohol or other substances had no impact on her assessment, that Plaintiff has the ability to voluntarily control the use of alcohol or other substances, and that Plaintiff could manage benefits in her own best interest.  (AR 2987.)

In considering the persuasiveness of Ms. Bindrim's opinions contained within the Mental Capacity Assessment, the ALJ first summarized her opinions as follows: Plaintiff "had [1]

---

[8]  In *May*, the Fourth Circuit upheld the district court's ruling affirming the ALJ's decision, concluding that (1) "the ALJ applied the correct legal standards in evaluating [plaintiff's] claims, particularly in terms of analyzing the supportability and consistency of the proffered medical opinion evidence," and (2) "that the ALJ's factual findings are supported by substantial evidence." 2023 WL 2908812, at *1 (citing *Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022)).  The Court takes the same analytical approach to the issues Plaintiff raises here.

moderate to mild limitations in understanding, remembering, or applying information, [2] marked to mild limitations in concentration, persistence, or maintaining pace, [3] extreme to moderate limitations in adapting or managing herself, and [4] marked to mild limitation in interacting with others."  (AR 21.)  Next, after noting that Ms. Bindrim served as Plaintiff's "mental health provider," the ALJ reasoned that Ms. Bindrim's opinions were "not persuasive" because "the marked and extreme limitations are not supported by Ms. Bindrim's documented observations of normal speech rate, appropriate effect, no psychomotor agitation, cooperative attitude, appropriate thought content, and intact remote memory."  (AR 21.)  The ALJ further explained that the opinions were not supported because, in the ordinary course of treating Plaintiff, Ms. Bindrim had previously found only "moderately impaired abstraction, mildly impaired verbal cognitive/social judgment, low normal spatial reasoning/orientation, low normal visuomotor construction and coordination, low normal psychomotor speed, pure motor speed, and calculation abilities, and mild to moderately impaired executive functioning," all of which did not "support marked and extreme limitations."  (AR 21–22.)

As to consistency, the ALJ explained that the "marked and extreme limitations are not consistent with the evidence the claimant's mood was stable and her symptoms improved with medication."  (AR 22.)  To support his conclusions, the ALJ cited several of Ms. Bindrim's treatment notes during the relevant period—including those from October 2020, January 2021, April 2021, and May 2022—which reflect her objective findings, as well as Plaintiff's subjective statements during appointments.  (AR 22.)  Accordingly, the ALJ concluded that Ms. Bindrim's opinions were not persuasive.

Upon review, the Court finds that ALJ applied the correct legal standard in evaluating Ms. Bindrim's mental limitation opinions because he applied both the supportability and consistency factors in determining the persuasiveness of those opinions, as required under 20 C.F.R.

§ 404.1520c(b).  As outlined above, the ALJ reviewed Ms. Bindrim's opinions, explained that those opinions were not supported by the medical evidence contained in her treatment notes, explained that those opinions were not consistent with other evidence in the record (including Plaintiff's own statements), and provided citations to the record evidence that supported his conclusions.  In doing so, the ALJ properly "buil[t] an accurate and logical bridge from the evidence to his conclusion," which is all that is required.  *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016); *see* 82 Fed. Reg. 5844, 5858 (analysis under 404.1520c intended to allow the "reviewing court to trace the path of [the ALJ's] reasoning").

Plaintiff asserts that the ALJ erred in finding Ms. Bindrim's opinions unpersuasive because he cited only "unremarkable objective status exam findings" that "mischaracterized the record" and "cherry-picked objective evidence to discount an opinion based on inherently subjective impairments." (Dkt. No. 11 at 11.)  But putting aside whether the ALJ's conclusions are supported by substantial evidence (which is discussed in detail below), Plaintiff does not specifically argue that the ALJ applied the wrong *legal standard*—i.e., that the ALJ failed to assess the supportability and consistency factors altogether.  As explained above, the regulations require an ALJ to expressly explain how the supportability and consistency factors are considered in assessing the persuasiveness of each medical opinion.  20 C.F.R. §§ 404.1520c(a), (b)(2).  There is, however, "no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)); *see also* 82 Fed. Reg. 5844, 5858 (explaining that the Commission "consider[s] all evidence" received, but standard for review "does not require written analysis about how [an ALJ] considered each piece of evidence").  Nor do the regulations require the ALJ to explain how each piece of evidence supports (or does not support) a medical source's

17

opinion; rather, opinions are to be considered at the "source-level," through applying the applicable factors.  20 C.F.R. §§ 404.1520c(a), (b)(1).

Additionally, although Plaintiff takes issue with the ALJ's reference to the so-called "unremarkable objective status exam findings" in Ms. Bindrim's treatment notes, that is precisely the type of evidence that the ALJ is required to consider when assessing supportability and consistency.  *See* 20 C.F.R. § 404.1520c(c)(1), (2).  Plaintiff's reliance on the Fourth Circuit's decision in *Shelley C.* is also unpersuasive, as that case involved the ALJ's failure to properly weigh a treating physician's opinion under a prior version of the applicable regulation—a question not at issue here.  *See Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 354 & n.6 (4th Cir. 2023) (finding ALJ "failed to address each of 20 C.F.R. § 404.1527(c)'s six factors"); *see also* 20 C.F.R. § 404.1520c(a) (Section 404.1527 applies only for claims filed before March 27, 2027).

In sum, while Plaintiff may disagree with the ALJ's ultimate *conclusion* regarding the persuasiveness of Ms. Bindrim's opinion, that does not mean that the ALJ applied the wrong legal standard in evaluating that opinion.  Thus, because the ALJ evaluated the persuasiveness of Ms. Bindrim's opinions and explained how, in his view, those opinions were (1) not supported by Ms. Bindrim's prior observations, and (2) not consistent with additional evidence in the record, the Court finds that the ALJ applied the correct legal standard in evaluating those opinions.

### B.  Substantial Evidence Supports the ALJ's Conclusions Regarding the Persuasiveness of Ms. Bindrim's Medical Opinions

Plaintiff asserts that the ALJ relied on "cherrypicked findings" that "do not form the substantial basis for the rejection of Ms. Bindrim's opinion," and, therefore, the "RFC determination was not supported by substantial evidence." (Dkt. No. 11 at 7, 11.)  Other than contesting the ALJ's treatment of Ms. Bindrim's opinion, however, Plaintiff does not challenge

the ALJ's RFC determination on any other basis.[9]  In response, Defendant argues that the "medical evidence of record support the reasonableness of the ALJ's" supportability and consistency assessments, and thus, that substantial evidence supports his decision.  (Dkt. No. 12 at 13, 19.)  Upon review, the Court finds that substantial evidence—i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"—supports the ALJ's conclusion that Ms. Bindrim's opinions were not persuasive because they were not well supported and were inconsistent with other evidence in the record.  *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001).

As an initial matter, the Court finds that the treatment notes expressly cited by the ALJ reasonably support his conclusions regarding Ms. Bindrim's opinions.  (AR 22.)  As previously noted, Ms. Bindrim left blank the sections of the Mental Capacity Assessment requesting that she "[d]escribe the medical/clinical findings that support [her] assessment."  (AR 2985.)  As such, Ms. Bindrim arguably did not provide *any* explanation (whether based on Plaintiff's subjective reports or not) as to why she marked Plaintiff's limitations as "marked" or "extreme" for certain areas of functioning.  (AR 2985–87.)  Nevertheless, the ALJ specifically relied on, and cited to, the objective medical evidence in Ms. Bindrim's treatment notes from October 2020, January 2021, April 2021, and May 2022, to evaluate the persuasiveness of her opinions.[10]  *See* 20 C.F.R.

---

[9] Plaintiff has thus waived any other argument on review.  *See Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) ("A party waives an argument by failing to present it in its opening brief or by failing to 'develop [the] argument'—even if [the] brief takes a passing shot at the issue." (quoting *Brown v. Nucor Corp.*, 785 F.3d 895, 923 (4th Cir. 2015))); *Harris v. Kijakazi*, 21-1853, 2022 WL 2987928, at *2 (4th Cir. July 28, 2022) (argument waived in social security appeal where plaintiff failed "to explain his argument or support it with citations to a voluminous record," which "render[ed] review impossible").

[10] The mental status exams contained in the record are important because, pursuant to 20 C.F.R. § 404.1513(a)(1), an ALJ must consider "objective medical evidence," which includes "medical signs" and "laboratory findings."  As relevant to alleged mental impairments, "[p]sychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g.,

§ 404.1520c(c)(1).  As the ALJ explained, Ms. Bindrim found that Plaintiff had "normal speech rate, appropriate affect, no psychomotor agitation, cooperative attitude, appropriate thought contact, and intact remote memory," as well as "moderately impaired abstraction, mildly impaired verbal cognitive/social judgment, low normal spatial reasoning/orientation, low normal visual motor construction and coordination, . . . and mild to moderately impaired executive functioning," among other findings.[11]  (AR 22.)  The Court finds that the ALJ reasonably concluded that these "mild," "low normal," and "moderate" findings did not support Ms. Bindrim's opinions that Plaintiff had "marked" and "extreme" mental functioning limitations.

In the face of the objective medical evidence found in Ms. Bindrim's treatment notes, Plaintiff argues that the ALJ "mischaracterized the record by omitting from consideration Plaintiff's subjective reports to Ms. Bindrim," and that a proper review of Ms. Bindrim's "supporting treatment notes as a whole" would have led the ALJ to conclude that her opinions were persuasive.  (Dkt. No. 11 at 11).  The Court disagrees.  A careful review of the record demonstrates that, even considering Plaintiff's own subjective statements to Ms. Bindrim, there is ample evidence in the record to support the ALJ's conclusions that Ms. Bindrim's "marked" and "extreme" mental limitations opinions were not persuasive.  For example, the treatment notes that the ALJ specifically cited in the decision also reflect the following:

---

abnormalities of behavior, mood, thought, memory, orientation, development, or perception, and must also be shown by observable facts that can be medically described and evaluated."  20 C.F.R. § 404.1502(g).  The mental status exams in the record measured several of these aspects of Plaintiff's mental functioning.

[11] Plaintiff does not contend that these findings were inaccurate.  Indeed, Plaintiff's *own briefing* characterizes Ms. Bindrim's treatment notes as reflecting that "Plaintiff exhibited . . . low normal attention/concentration, mildly impaired verbal and nonverbal intelligence, mildly impaired cognitive flexibility, and moderately impaired executive functioning."  (Dkt. No. 11 at 10 (emphasis added).)

- On October 13, 2020, Plaintiff reported waking up "with a panic attack," stated that she "been feeling bad," and reported feeling "that she is grieving," but noted she was "[o]therwise stable," and "[f]eels that she has good emotional support."  (AR 2585.)

- On January 6, 2021, Plaintiff told Ms. Bindrim that she "feels her medicine is working [with] no side effects," and that she "[f]eels that she is stable in her mood and that the medication is effective all but for continued disruption in sleep."  (AR 2605.)

- On January 20, 2021, Plaintiff reported to Ms. Bindrim that she was "feel[ing] great [with] no complaints."  (AR 2608.)

- On April 7, 2021, Ms. Bindrim wrote that Plaintiff "states her mood has been up and down" and that she "has been having bad dreams again."  (AR 2614.)

- On May 12, 2022, Ms. Bindrim wrote that Plaintiff's sleep was "broken [due to] her dad's passing," that she was "[e]ating ok at this time," that "pain is also causing her problems," that she was experiencing an increase in anxiety," but that she "feels her medicine is working no side effects."  (AR 3113.)

As this subjective evidence shows, Plaintiff often reported to Ms. Bindrim that her mood was stable and that her medication improved her symptoms, and Plaintiff does not otherwise explain how this evidence would compel the ALJ to conclude that Plaintiff had "marked" or "extreme" limitations, including in areas such as the "ability to perform a task the patient knows how to do," or "make plans independently of others."  (AR 2986.)

Additionally, the specific treatment notes cited by the ALJ are largely consistent with Ms. Bindrim's *other* treatment notes in the record, providing further support for the ALJ's conclusions. For example, on October 27, 2020—two weeks after her initial appointment with Ms. Bindrim— Plaintiff discussed her medications with Ms. Bindrim and stated that she was "feeling a little

better."[12]  (AR 2588.)  Similarly, on December 9, 2020, Plaintiff told Ms. Bindrim that "her mood has been stable," that "she is getting help falling asleep but not staying asleep," that her "focus is a bit better and eating ok," and also that she "[f]eels she has been doing ok."  (AR 2596.)  And on August 10, 2022, Plaintiff reported that she "has ongoing issues with loss and grief," but that she "does feel that her medication is helping to stave off depression and anxiety as she continues the grieving process."  (AR 3118.)  Plaintiff is thus incorrect that the ALJ "cherry-picked" evidence that is inconsistent with other evidence in the record.  *See Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017) (ALJ may not cherry-pick facts that support a finding of nondisability while ignoring those supporting disability).

Plaintiff is also incorrect that the ALJ determined that Plaintiff's apparent "stability equated to an indication of non-disability."  (Dkt. No. 11 at 11; *see also* Dkt. No. 13 at 3.)  Instead, when considering the consistency factor, the ALJ merely reasoned that the "marked and extreme limitations are not consistent *with the evidence [that]* the claimant's mood was stable and her symptoms improved with medication."  (AR 22 (emphasis added)). Rather than constitute error, this "is precisely what the ALJ [was] supposed to do."  *May v. Comm'r of Soc. Sec. Admin.*, 920CV02197MGLMHC, 2021 WL 7286833, at *6 (D.S.C. Oct. 6, 2021), *report and recommendation adopted*, 2022 WL 593957 (D.S.C. Feb. 25, 2022), *aff'd*, 2023 WL 2908812 (4th Cir. Apr. 12, 2023) (citing *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)).  Plaintiff further faults the ALJ for not providing record citations after the consistency discussion, but the treatment notes cited in support of the prior sentence contain evidence of Plaintiff's "stable mood"—i.e., that Plaintiff "[f]eels that she is stable in her mood" (AR 22 (citing B17F 24 (i.e.,

---

[12] Notably, the ALJ expressly cited this treatment note in his decision, noting that in October 2020, Plaintiff was "restarted on medication and reported feeling a little better."  (AR 19 (citing B17F/6-7 (i.e., AR 2587–88))).

AR 2605)))—which supports the ALJ's assessment.  Further, the ALJ's reference to "evidence [that] the claimant's mood was stable and her symptoms improved with medication" also rebuts Plaintiff's argument that the ALJ "omit[ed] from consideration Plaintiff's subjective reports," as this was a direct reference to Plaintiff's own statements to Ms. Bindrim.  (*Contra* Dkt. No. 11 at 10–11.)

In further support of her position, Plaintiff cites evidence that she "report[ed] continued panic attacks as well as attention issues with completing tasks, depression, anxiety, and feelings of hopelessness."  (Dkt. No. 11 at 10.)  But "even if the allegedly contradictory evidence Plaintiff highlights could support a different result, the court's role is not to second-guess the ALJ's findings."  *Brian A.H. v. Kijakazi*, 3:20-CV-00654, 2021 WL 6496558, at *7 (E.D. Va. Dec. 29, 2021), *report and recommendation adopted*, 2022 WL 129127 (E.D. Va. Jan. 13, 2022).  Thus, as long as substantial evidence supports the ALJ's conclusions, as it does here, the Court does not undertake to "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]."  *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)); *see Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." (quoting *Craig*, 76 F.3d at 589)).

Finally, the Court finds that the ALJ's RFC determination properly included several mental functioning limitations, such that the ALJ "reasonably found that Plaintiff could perform a range of unskilled work with additional limitations."  (Dkt. No. 12 at 11.)  Specifically, the ALJ determined that Plaintiff was "limited to jobs that require understanding, remembering, and carrying out <u>simple instructions</u> and using judgment to make <u>simple work-related decisions</u>," that she "<u>cannot</u> perform work requiring a specific production rate such as assembly line work or work

that requires hourly quotas," that she was "limited to only <u>occasional</u> interaction with the public, co-workers, or supervisors," and that she was "limited to dealing with only <u>occasional</u> changes in a routine work setting."  (AR 16 (emphasis added).)  In support of these findings, the ALJ cited evidence that, throughout the relevant period, Plaintiff had "report[ed] panic attacks" to Dr. Bindrim," (AR 19 (citing B17F/4 (AR 2585))), "had a depressed and anxious mood" (as observed by Ms. Bindrim (AR 19 (citing B17F/8, 10, 12 (AR 2591, 2593))), "reported increased stress because her father was not doing well" (AR 19 (citing B16F/11 (AR 2446))), and also "reported her medication helped stave off depression and anxiety as she continued through the grieving process of losing her father" (AR 19 (citing B33F/10 (AR 3118))).  Accordingly, the ALJ specifically considered not just the objective medical evidence, but also Plaintiff's subjective statements, including her reports to Ms. Bindrim of "continued panic attacks" and "ongoing issues related to grief and loss" (Dkt. No. 11 at 9–10), when determining the RFC.

In conclusion, the Court finds that there is substantial evidence—i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"—to support the ALJ's conclusion that Ms. Bindrim's opinions were not persuasive.  *Mastro*, 270 F.3d at 176 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  Because the Court "must uphold the factual findings of the [ALJ] if they are supported by substantial evidence," the Court will affirm the ALJ's decision.  *Hancock*, 667 F.3d at 471 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam)).

\*     \*     \*

For the reasons stated above, it is hereby

**ORDERED** that Plaintiff's Motion for Summary Judgment (Dkt. No. 11) is **DENIED**; it is further

24

**ORDERED** that Defendant' Motion for Summary Judgment (Dkt. No. 12) is **GRANTED**. The final decision of the Commissioner is **AFFIRMED.**

The Clerk of Court is directed to enter judgment in favor of Defendant.

**ENTERED** this 20th day of June, 2024.

/s/
Lindsey Robinson Vaala
United States Magistrate Judge